UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| JAMIE CALVILLO, | | Case No. 2:18-CV-1580 JCM (EJY) |
| | Plaintiff(s), | ORDER |
| v. | | |
| CVSM, LLC, et al., | | |
| | Defendant(s). | |

Presently before the court is defendants CVSM d/b/a Centerfolds Cabaret ("Centerfolds"), Steve Paik ("Paik"), and James McGinnis's ("McGinnis") (collectively "defendants") motion for summary judgment. (ECF No. 25). Plaintiff Jaime Calvillo ("plaintiff") filed a response (ECF No. 26), to which defendants replied (ECF No. 28).

I.    **Background**

This instant action arises from alleged sexual harassment plaintiff suffered at the hands of defendant McGinnis while plaintiff was employed by Centerfolds. (ECF No. 1). Plaintiff was hired as a cashier for Centerfolds in February of 2017; McGinnis was the manager of the club during her employment. *Id.* The exact nature of their relationship is disputed, but plaintiff and McGinnis personally interacted outside of the workplace. (ECF Nos. 25; 26). This interaction included plaintiff staying the night with McGinnis and his girlfriend, going to McGinnis's residence for her child to have a "playdate" with his, and asking him to jumpstart her car. *Id.*

Plaintiff alleges that McGinnis would regularly ask her out on dates while at work, which she rejected. (ECF No. 26). McGinnis told plaintiff, "if you keep rejecting me, I will replace you." (ECF No. 25-2 at 20).

In addition to this alleged verbal sexual harassment, plaintiff claims there was also physical sexual harassment. The first of these incidents occurred in March of 2017. (ECF No. 25-2 at 20). McGinnis allegedly came into the DJ booth and grabbed plaintiff's bottom. *Id.* The next incident occurred sometime during spring or summer. Plaintiff alleges that McGinnis came up from behind her, grabbed her by the ponytail, and violently pulled her hair from behind while moaning into her ear. (ECF No. 25-2 at 20). Finally, plaintiff alleges that McGinnis attempted to show her an inappropriate picture of himself, which she refused to look at. *Id.* at 17.

Plaintiff's employment at Centerfolds ended on October 7, 2017. (ECF No. 25). The facts of what led to the end of her employment are disputed. Plaintiff was suspended for a week for coming in to work inebriated, which was determined through her blowing a positive result on a breathalyzer device at the club. *Id.* Plaintiff alleges the club had a broken breathalyzer and everyone blew a positive number, even if they weren't drinking. (ECF No. 26 at 9–10). During her suspension, plaintiff attended the Route 91 Festival where the October 1, 2017, shooting occurred. (ECF No. 25). Plaintiffs left her purse at the scene, which contained her sheriff's card and other identification required by law to work in a cabaret environment. *Id.* Plaintiff could not get replacements for these documents because she had overdue traffic tickets that resulted in a warrant for her arrest. *Id.*

Plaintiff informed Centerfolds about her lost identification. *Id.* Because plaintiff could not legally return to work, Centerfolds, told her that it would treat the situation as a resignation.

*Id.* However, Centerfolds informed her that when her belongings were released to her, she could be rehired. *Id.*

Plaintiff appeared at Centerfolds the next morning and caused a disturbance. (ECF No. 25-5 at 3). Plaintiff was informed that if she did not leave the property, employees would call the police. *Id.* at 4. Defendants allege the offer of future employment was no longer open to her after the disturbance. *Id.* at 11.

Plaintiff brings five causes of action. (ECF No. 1). Defendants now move for summary judgment on all causes, arguing that there is no set of facts under which plaintiff can prevail. (ECF No. 25).

## II.     Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. Discussion

### A. Plaintiff's federal claim

Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, expressly prohibits employers from "discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). This general prohibition extends to sexual harassment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986). Courts recognize two form of sexual harassment. *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991). First, there are "quid pro quo" cases, where "employers condition employment benefits on sexual favors." *Id.* Alternatively, Title VII plaintiffs may bring "hostile environment" cases, where employees work in offensive or abusive environments. *Id.*

Here, plaintiff brings a single claim under federal law: hostile work environment arising from sexual harassment in violation of 42 U.S.C. § 2000e[1]. (ECF No. 1). To prevail on a hostile work environment claim, plaintiff must prove three elements: "1) she was subjected to verbal or physical conduct of a sexual nature, 2) this conduct was unwelcome, and 3) the conduct was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

---

[1] Plaintiff originally brought this claim against McGinnis as well, but both parties have agreed that only Centerfolds is properly a party to the Title VII claim.

abusive working environment.'" *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995), *as amended* (Apr. 24, 1995) (quoting *Ellison,* 924 F.2d at 875–76).

Plaintiff alleges that McGinnis regularly asked her out, came up behind her pulling her hair and moaning in her ear, and attempted to show her an inappropriate picture.[2] (ECF No. 26). Construing the facts most favorable to plaintiff, the court finds that plaintiff was subject to verbal and physical conduct of a sexual nature and that the conduct was unwelcome, satisfying the first two elements of her claim.

The court turns to the third element of plaintiff's claim: whether the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive working environment. This element requires both subjective[3] and objective severity, as the Supreme Court explained in *Harris v. Forklift Sys. Inc.*:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). "[T]he objective portion of the claim is evaluated from the reasonable woman's perspective." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002) (citing *Ellison,* 924 F.2d at 879–80).

"[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris,* 510 U.S. at 23. The Supreme Court articulated several factors for the court to consider: "the frequency of the discriminatory conduct; its severity; whether it is

---

[2] The court does not include the incident in the DJ booth—where McGinnis allegedly grabbed plaintiff's bottom—because plaintiff sent text messages to Iggy Magana, another manager, expressly denying that the incident occurred.

[3] Plaintiff's allegations satisfy the subjective standard, particularly because she brings an intentional infliction of emotional distress claim under state law. (*See generally* ECF No. 1).

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Here, it is unclear whether plaintiff was subjected to a hostile work environment based on the totality of the circumstances. While plaintiff was subjected to McGinnis asking her out regularly, plaintiff does not allege that this interfered with her work performance. Indeed, plaintiff says that McGinnis stopped asking her out "in summertime in which he started dating someone." (ECF No. 25-2 at 20). Plaintiff alleges only three other separate incidents: McGinnis grabbing her bottom, which she later denied happening; McGinnis attempting to show her an inappropriate picture; and McGinnis grabbing her hair and moaning. (ECF No. 25).

However, the court need not decide if plaintiff was subjected to a hostile work environment. Defendants assert the affirmative "reasonable care" defense to vicarious liability under Title VII. (ECF No. 25). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages. . ." *Faragher v. City of Boca Raton,* 524 U.S 775, 807 (1998).

Thus, as a threshold matter, the court must determine whether Centerfolds took a tangible employment action against plaintiff. If it did not, then Centerfolds is entitled to raise a reasonable care defense. Plaintiff intertwines claims of retaliatory firing throughout the briefing, although she never actually brings it as a cause of action. The court considers whether this is a tangible employment action for purposes of the defense.

Plaintiff has a history of being disciplined at Centerfolds. She was written up for being late to work in March, and also suspended and placed on probation for showing up to work

intoxicated in September. (ECF No. 25-4). Plaintiff disputes whether the breathalyzer (where she blew ranges from .07–.16) was accurate. However, the only evidence plaintiff offers for this allegation is a text message she sent to another manager, where she claims the breathalyzer is broken. (ECF No. 26 at 52). Plaintiff presents no evidence to support this claim of inaccuracy. Thus, the court is left to conclude that the breathalyzer was working, plaintiff was intoxicated, and her suspension was justified.

Plaintiff was unable to return to work after her suspension because she did not possess the proper identification to legally work at Centerfolds. Plaintiff had the option to obtain replacement identification but was unable to because she had a warrant out for her arrest. (ECF No. 25). Plaintiff also came to Centerfolds after being told her inability to come to work was being treated as a resignation, where she caused a scene that caused Centerfolds to threaten to call the police. *Id.*

Centerfolds had legitimate business reasons for not employing plaintiff. Thus, the harassment did not lead to a tangible employment action being taken against plaintiff and defendants are able to raise the affirmative defense.

To successfully assert the defense, Centerfolds must prove two necessary elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexual harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher,* 524 U.S at 807.

Here, Centerfolds exercised reasonable care to prevent and correct promptly any sexual harassing behavior. Plaintiff's comments about McGinnis eventually made their way to Misty

James C. Mahan
U.S. District Judge

Subit, Centerfolds's human resources officer.[4]  Subit reached out to plaintiff three times, twice through email and once through the phone, letting plaintiff know that Centerfolds takes claims for sexual harassment seriously.  (ECF No. 25).  Plaintiff's only response to this was that everything was fine.  *Id.*  Despite this, Subit still attempted to conduct an investigation and asked McGinnis about it.  *Id.*  After McGinnis denied any wrongdoing, Subit was unable to conduct any further investigation due to plaintiff's lack of cooperation.

Plaintiff argues that Subit was one of McGinnis's employees and, consequently, did not trust her to handle the sexual harassment claims.  (ECF No. 26).  However, plaintiff spoke to defendant Paik, the owner of Centerfolds,[5] whom she believed was the proper person to field the complaints.  *Id.*  Plaintiff alleges that she reached out to Paik once in person and also through text messages.  *Id.*  Plaintiff's evidence shows that she informed Paik about McGinnis's behavior, but she never informed Paik that she was being sexually harassed by McGinnis.  (*See* ECF No. 25-11).  Specifically, plaintiff never raised the issue of McGinnis continually asking her out or the other incidents that she alleges.

To the extent defendants were on notice regarding sexual harassment toward plaintiff, they investigated to the best of their ability but were hampered by plaintiff's lack of cooperation.  Thus, Centerfolds took reasonable care to try to prevent and correct the behavior.

Next, plaintiff unreasonably failed to take advantage of any preventive or corrective measures available to her.  While Centerfolds did not have a formal policy in place about sexual harassment, the Supreme Court said, "an employer of a small work force. . .  might expect that

---

[4] Plaintiff and defendants argue whether Subit was, in fact, the human resources officer. (*See* ECF No. 26 at 7–9).  But, regardless of her title, Subit handled all human-resources-related tasks and responsibilities; no one else at the company discharged these duties.  (ECF No. 28 at 4–5).

[5] Paik is the manager of CVSM, LLC, which, in turns, owns and operated Centerfolds.

sufficient care to prevent tortious behavior could be exercised informally." *Faragher*, 524 U.S at 808.

Whether or not Subit was the correct person to bring her complaints to, plaintiff also had the opportunity to bring them to Paik. Paik left the channels of communication open to plaintiff, and plaintiff had ample opportunity to tell him about the sexual harassment. (*See* ECF No. 25-11). Plaintiff also had the opportunity to bring up the claims to Iggy Magana, another manager, who reached out to her about the incident in the DJ booth where McGinnis allegedly grabbed plaintiff's bottom. However, plaintiff expressly denied this happening. (ECF No. 25)

Thus, plaintiff failed to use any of the measures available to her to inform Centerfolds about the alleged sexual harassment. Defendants effectively raise the affirmative defense and the court grants defendants' motion for summary judgment as to this claim against Centerfolds.

### B. Plaintiff's state-law claims

Pursuant to 28 U.S.C. § 1367, the court may exercise supplemental jurisdiction over state law claims. *See* 28 U.S.C. § 1367. Section 1367(a) provides that where a district court has original jurisdiction over a civil case, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction pursuant to § 1367 includes "claims that involve the joinder or intervention of additional parties." *Id.* However, the district court may decline its right to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)–(4).

Here, the court has granted summary judgment for plaintiff's single federal cause of action. As a result, 28 U.S.C. § 1367(c)(3) applies, and the court declines to exercise supplemental jurisdiction over plaintiff's claims. Dismissal of plaintiff's state law claims is appropriate.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment as to plaintiff's second cause of action—hostile work environment arising from harassment based on plaintiff's gender in violation of 42 U.S.C. § 2000e— (ECF No. 25) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's first, third, fourth, and fifth causes of action be, and the same hereby are, DISMISSED for lack of jurisdiction.

The clerk is instructed to enter judgment and close the case accordingly.

DATED March 30, 2020.

_____
UNITED STATES DISTRICT JUDGE